O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Lisa M. Redd, | ) Case No. CV 11-5989-MLG |
| Plaintiff, | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff Lisa M. Redd seeks judicial review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is affirmed and the action is dismissed with prejudice.

**I. BACKGROUND**

Plaintiff was born on April 30, 1968. (AR at 62). She has relevant work experience as a home attendant and a waitress. (AR at 29). Plaintiff filed an application for DIB on January 6, 2009, alleging disability beginning November 1, 2007. (AR at 23). The Social Security Administration denied Plaintiff's application

1

initially on April 2, 2009. (AR at 23).

A hearing was held before Administrative Law Judge ("ALJ") David G. Marcus on May 24, 2010. (AR at 23). Plaintiff, appearing with an attorney, testified at the hearing, as did a vocational expert ("VE"). (AR at 23). The ALJ issued a decision on July 7, 2010, denying Plaintiff's application. (AR at 18-25). The ALJ found that although Plaintiff suffers from bipolar disorder, a mood disorder not otherwise specified, and asthma, she has the residual functional capacity ("RFC") to perform a reduced range of light work "involving simple repetitive tasks with only occasional interaction with the public, coworkers and supervisors." Relying on the testimony of the VE, the ALJ determined that the RFC allows her to perform work that exists in significant numbers in the national economy. (AR at 30). The Appeals Council denied review on June 17, 2011 (AR at 1-3).

Plaintiff commenced this action for judicial review on July 27, 2011. The parties filed a joint statement of disputed issues ("Joint Stip.") on March 1, 2012. Plaintiff contends that the ALJ improperly assessed her RFC for the mental requirements of work activity as described by consulting physician Dr. Larisa Levin, and that he gave insufficient weight to the opinion of Yoshado Lang, Ph.D., the treating psychologist. (Joint Stip. at 4-9). Plaintiff seeks reversal and payment of benefits, or alternatively, remand for further administrative proceedings. (Joint Stip. at 17). The Defendant requests that the ALJ's decision be affirmed or, if the Court finds that the ALJ committed reversible error, that the Court remand for further administrative proceedings. (Joint Stip. at 18).
//

## II. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The decision of the Commissioner or ALJ must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. Analysis

### A. The ALJ Properly Evaluated Plaintiff's Mental Impairments

Plaintiff contends that the ALJ's RFC determination did not adequately take into account the mental limitations assessed by the psychiatric examiner Larisa Levin, M.D. (Joint Stip. at 4-5). She argues that to the extent the ALJ's RFC determination constituted a rejection of the opinion of Dr. Levin, he should have stated

3

specific and legitimate reasons for the rejection. (Joint Stip. at 5).

Dr. Levin evaluated Plaintiff and summarized her findings in a report dated March 10, 2009. (AR at 183-89). In the report, Dr. Levin described Plaintiff as "moderately impaired" in the following six areas of function: (1) ability to relate and interact with supervisors, coworkers, and the public; (2) ability to maintain concentration and attention, persistence and pace; (3) her ability to associate with day-to-day work activity, including attendance and safety; (4) ability to adapt to the stresses common to a normal work environment; (5) ability to maintain regular attendance in the work place and perform work activities on a consistent basis; and (6) ability to perform work activities without special or additional supervision. (AR at 187-88).

In his decision, the ALJ stated that he accorded significant weight to Dr. Levin's findings. (AR at 28). The ALJ also gave great weight to the opinion of the state agency psychiatrist R. Tashjian, M.D., who reviewed Dr. Levin's opinion and made the finding that Plaintiff "can complete simple repetitive tasks with limited social contact." (AR at 190). Dr. Tashjian's findings were reflected in the ALJ's RFC determination that Plaintiff could perform a reduced range of light work "involving simple repetitive tasks with only occasional interaction with the public, coworkers and supervisors." Plaintiff argues that this RFC did not adequately incorporate Dr. Levin's findings in areas two through six, listed above. (Joint Stip. at 6).

The Ninth Circuit has held that an ALJ may rely on the opinion of a nonexamining doctor to "translate" mental limitations into

concrete restrictions in the RFC assessment. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008). In *Stubbs-Danielson*, an evaluating physician identified the claimant as moderately or mildly limited in several mental functioning areas, but did not assess whether she could perform work on a sustained basis. *Id.* at 1173. The state agency reviewing psychologist also identified moderate limitations in several mental functioning areas, and concluded that the claimant retained the ability to "carry out simple tasks." *Id.* The claimant argued on appeal to the Ninth Circuit that the ALJ's finding of a RFC for simple, routine, repetitive work failed to capture the limitations identified by the evaluating physician. Concluding that the ALJ's RFC finding properly incorporated the identified limitations, the Court explained:

> The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him-[the state agency reviewing psychologist] recommended restriction to "simple tasks." This does not, as Stubbs-Danielson contends, constitute a rejection of [the evaluating physician's] opinion. . . . As two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace

5

and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace). 539 F.3d at 1174.

Here, the ALJ "translated [Plaintiff's] condition ... into the only concrete restrictions available to him ... 'simple tasks.'" *Id*. As *Stubbs-Danielson* and numerous decisions have held, an RFC for "simple tasks" adequately captures limitations in the areas of concentration, attention, persistence, pace, and adaption. *See id.; Pao Mee Xiong v. Astrue,* No. 1:10cv01135, 2011 WL 3322828, at *18 (E.D.Cal. Aug. 2, 2011) (RFC of simple, repetitive tasks adequately takes into account limitations in concentration, persistence, and pace); *Dupree v. Astrue,* No. CV 10-3146-JCG, 2011 WL 651886, at *5 (C.D.Cal. Feb. 10, 2011) (same). As to the other areas of moderate impairment identified by Dr. Levin, including adaption to stress, attendance, and need for supervision, there is simply no indication from any medical source that such limitations prevent Plaintiff

from engaging in simple, repetitive tasks.[1] Therefore, it was appropriate for the ALJ to rely on the findings of Dr. Tashjian in making his RFC determination.

Accordingly, the ALJ's determination that Plaintiff's mental limitations were adequately captured by an RFC assessment restricting Plaintiff to simple repetitive tasks with only occasional interaction with the public, coworkers, and supervisors was supported by substantial evidence.

### B. The ALJ Gave Appropriate Weight to the Treating Psychologist's Opinion

Plaintiff contends that the ALJ improperly rejected the opinion of her treating psychologist, Dr. Lang. (Joint Stip. at 6-8). Dr. Lang began treating Plaintiff for mental illness in 2008. (AR at 215-65, 403). In a Mental Residual Functional Capacity Questionnaire completed on April 6, 2010 (the "Questionnaire"), Dr. Lang diagnosed Plaintiff as having bipolar disorder, another mood disorder, and asthma, with a Global Assessment of Functioning ("GAF") score between 58 and 60. (AR at 403). He found that Plaintiff had extreme limitations in multiple areas of work-related functions and marked or moderate limitations in several others.[2]

---

[1] To the extent that the opinion of Dr. Lang supports Plaintiff's argument that these areas of impairment prevent her from performing simple repetitive tasks, the ALJ properly rejected the extreme limitations assessed by Dr. Lang, as discussed more fully in the following section.

[2] The Questionnaire contains the following definitions: (1) "Extreme: there is major limitation in this area. There is no useful ability to function in this area"; (2) "Marked: there is serious limitation in this area. There is substantial loss in the ability to effectively function"; and (3) "Moderate: there is

(AR at 406-07). He also noted that within a two hour period "the client reported to need 4 breaks lasting 10-15 minutes," and that she would need to be absent from work more than four days per month. (AR at 407). In contrast to Dr. Lang's findings of extreme and marked limitations, examining psychiatrist Dr. Levin concluded that Plaintiff suffered from only mild or moderate limitations. (AR at 183-88).

An ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion

---

moderate limitation in this area but the individual is still able to function satisfactorily."

8

rests of independent clinical findings).

The ALJ stated that he was giving the opinion of Dr. Levin significant weight and that while he would give the assessment of Dr. Lang some weight, "little weight is given to the extreme limitations set forth in the recent medical source statement." (AR at 29). The ALJ then provided specific and legitimate reasons for refusing to give Dr. Lang's opinion controlling weight, which were supported by substantial evidence in the record.

One of the reasons the ALJ gave was that the responses "are essentially the claimant's responses and not the signing doctor's professional opinion," citing to the answer Dr. Lang provided regarding breaks, which stated "the client reported to need four breaks [within a two-hour period]." (AR at 29, 407). It is the responsibility of the ALJ to determine credibility, *see Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989), and here, the ALJ determined that Plaintiff's statements regarding her subjective complaints were not credible, a determination which has not been challenged by Plaintiff in this action. (AR at 28). Therefore, it was reasonable for the ALJ to doubt the veracity of findings that simply relayed Plaintiff's complaints. *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (citations and internal quotation marks omitted). Plaintiff argues that because Dr. Lang specifically attributed some of the answers on the Questionnaire to Plaintiff, this demonstrates that answers not so attributed must be Dr. Lang's own opinion. (AR at 7-8). This

argument is not persuasive. The vast majority of the Questionnaire contains "check-box" questions, which have no space for a notation regarding whether the answers were based on Plaintiff's subjective reports. (AR at 403-08).

The ALJ also rejected Dr. Lang's findings of extreme limitations as inconsistent with the GAF score of 58. (AR at 29). The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass' n, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). The Scale "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *Id*. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). While Plaintiff is correct that a GAF score is not determinative of mental disability or limitation for social security purposes, *see* 65 Fed.Reg. 50746, 50764-50765 (Aug. 21, 2000), it nevertheless may help guide an ALJ's determination in evaluating the severity of a claimant's mental impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("a GAF score may be of considerable help to the ALJ in formulating the RFC"); *Orellana v. Astrue*, 2008 WL 398834, at *9 (E.D.Cal. Feb.12, 2008) (same). Here, the ALJ used the GAF score not to directly determine Plaintiff's RFC, but instead to analyze the internal consistency of Dr. Lang's opinion. As Plaintiff's high GAF score indicated only moderate difficulty in functioning, it was at odds with Dr. Lang's findings that Plaintiff was extremely impaired in

multiple areas of functioning. Thus, it was reasonable for the ALJ to consider this factor in failing to give controlling weight to Dr. Lang's findings. *See Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992) (inconsistencies in doctor's findings represent specific and legitimate reasons for the ALJ to reject such findings); *see also Macri v. Chater,* 93 F.3d 540, 544 (9th Cir. 1996) ("the ALJ is entitled to draw inferences logically flowing from the evidence") (internal quotation marks omitted).[3]

Accordingly, the AlJ's decision not to give Dr. Lang's opinion controlling weight is supported by substantial evidence and no relief is warranted on this claim.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED** and the action is **DISMISSED** with prejudice.

Dated: March 13, 2012

_____
Marc L. Goldman
United States Magistrate Judge

---

[3] The ALJ also provided a third reason for rejecting Dr. Lang's opinion – that the Questionnaire was inconsistent with later correspondence dated May 17, 2010. (AR at 29). However, there is nothing inconsistent between the Questionnaire and the May 17, 2010 letter. Nevertheless, this error is harmless given that the ALJ provided two other well-supported reasons for not giving Dr. Lang's opinion controlling weight. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (harmless error rule applies to review of administrative decisions regarding disability)

11